**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **LAVERNIA HARPER as the Personal Representative of the Estate of ARTHER MCAFEE, JR., and LORINE MCAFEE,** *Plaintiffs,* | § | **CIVIL ACTION NO. 2:18CV520** |
| | § | ***JURY DEMANDED*** |
| **vs.** | § | |
| **JEFF MCANDREWS and HARRISON COUNTY, TEXAS** ***Defendants.*** | § | |

## MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DR. JOHN G. PETERS

NOW COME DEFENDANTS, **HARRISON COUNTY, TEXAS AND JEFF MCANDREWS,** and file this their Motion to Exclude the Expert Testimony of Dr. John Peters. In support thereof, Defendants would respectfully show the Court as follows:

## I. GENERAL RULES GOVERNING THE ADMISSIBILITY OF EXPERT TESTIMONY

### A. Rule 702 of the FEDERAL RULES OF EVIDENCE

Under Rule 702 of the FEDERAL RULES OF CIVIL PROCEDURE a witness who is qualified by knowledge, skill, experience, training, or education may offer a relevant opinion if: (a) the expert's knowledge will help the trier of fact; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case; e.g., *Smith v. Goodyear Tire & Rubber Co*., 495 F.3d 224, 227 (5th Cir. 2007); Also, the court must determine whether the proposed expert witness has training or experience to offer opinions that are relevant for the expert's testimony to assist the trier of fact. *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562-63 (5th Cir. 2004).

The court also must assess whether that reasoning or methodology underlying the testimony is valid and determine whether the reasoning or methodology can be applied to the facts at issue." *Skidmore v. Precision Printing & Packaging, Inc*., 188 F.3d 606, 617 (5th Cir. 1999); *see Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 592-93, 113 S. Ct. 2786, (1993).

B. Inadmissible Legal Opinions and Conclusions About State of Mind

An expert is not allowed to testify to legal conclusions and is not allowed to testify to a defendant's state of mind or his culpability. It appears from his report (Appendix A), that Dr. Peters intends to testify to such things. The Fifth Circuit consistently has held that testimony as to the reasonableness of force exercised by a law enforcement officer is a legal conclusion; e.g. *McBroom v. Payne*, 478 Fed. Appx. 196, 200 (5th Cir. 2012)(Rule 704 does not permit experts to offer legal conclusions, and whether an officer's use of his firearm was reasonable is a legal conclusion"); *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003)(cert. denied, 540 U.S. 1093, 124 S. Ct. 966 (2003).

Likewise, whether a defendant is entitled to qualified immunity is a question of law. In a qualified immunity analysis, the Court must determine whether the plaintiff has shown a violation of a clearly established constitutional or statutory right. *See Jones v. City of Jackson,* 203 F.3d 875, 879 (5th Cir. 2000). If the Plaintiff does so, the second step is to determine whether the defendant's conduct was objectively reasonable. *Id.* Both steps in the qualified immunity analysis are questions of law. *Wooley v. City of Baton Rouge*, 211 F.3d 913, 919 (5th Cir. 2000).

The issue of deliberate indifference also presents a question of law for the court. *Jacobs v. West Feliciana Sheriff's Dep't*, 228 F.3d 388, 394 (5th Cir. 2000). *In Harper v. City of Dallas*, 2017 U.S. Dist. LEXIS 200534; 105 FED. R. EVID. SERV. (Callaghan) 36; 2017 WL 6033799 (N.D. Tex.

2017) (Attached as Appendix C), the court excluded any expert testimony concerning the alleged deliberate indifference or other internal thought processes of any individual defendant or policymaker of the City of Dallas. *Id.* citing *Flanagan v. City of Dallas*, LEXIS 201365, 2017 WL 2817424 (N.D. Tex. May 25, 2017). This ruling was consistent with the law of the Fifth Circuit. *See Marlin v. Moody Nat'l Bank, N.A.*, 248 F. App'x 534, 540-41 (5th Cir. 2007) (expert opinions about a defendant's state of mind or his culpability are inadmissible).

## II. REASONS TO EXCLUDE THE TESTIMONY OF JOHN PETERS

In addition to problems of offering legal conclusions and opinions about the mental state of both Defendants and Arthur McAfee, the testimony of Dr. Peters fails to satisfy Rule 702 of the FEDERAL RULES OF CIVIL PROCEDURE in the following ways:

### A. Some of Dr. Peters' Proposed Testimony Would Not Be Relevant

1. Pertaining to McAndrews' Behavior

It is well established that testimony must be relevant to in order to assist the jury. As noted in Section III, below, some of Dr. Peters' opinions are not relevant because they pertain to conduct that occurred before the use of force at issue in this case. The Fifth Circuit has consistently held that an "excessive force inquiry is confined to whether the [officer] was in danger at the moment of the threat that resulted in the [officer's] shooting." *Bazan ex rel. Bazan v.Hidalgo Cnty*., 246 F.3d 481, 489, 493 (5th Cir. 2001)). Therefore, any of the officer's actions leading up to the shooting are not relevant for the purposes of an excessive force inquiry in this Circuit.

In *Rockwell v. Brown*, 664 F.3d 985 (5th Cir. 2011), a mother called 911 for assistance in helping her 27-year-old son get to a mental health facility during a crisis. *Id*. at 989. After being unable to convince the son to come out of his bedroom, the police decided to breach the door. *Id*.

When they did, the officers found the mentally unstable son holding two eight-inch serrated knives, and after he rushed towards the police officers and a struggle ensued, the officers fired their weapons and killed him. *Id*. at 989-90. On appeal, the plaintiffs argued that the officers' breach of the door to their son's room should be included in the deadly force inquiry, contending that the officers' actions "carried a substantial risk of causing serious bodily harm and was the immediate but-for cause of the resulting altercation between [their son] and the officers." *Id*. at 992. In rejecting this argument, the Court explained,

> It is well-established that "[t]he excessive force inquiry is confined to whether the [officer or another person] was in danger *at the moment of the threat* that resulted in the [officer's use of deadly force]." *Bazan*, 246 F.3d at 493. At the time of the shooting, [the Plaintiffs' son] was engaged in an armed struggle with the officers, and therefore each of the officers had a reasonable belief that [he] posed an imminent risk of serious harm to the officers. We need not look at any other moment in time.

*Id*. at 992-93 (emphasis in original). This rule applies to exclude Peters' similar opinions such as those about the principle of disengagement and lack of training on welfare checks.

2. Concerning the County's Policies

Because McAndrews' decisions and behavior prior to the use of force are not relevant, neither is Peters' testimony about policies or training that pertain to any of his decisions or behavior prior to the use of force. *See, Harper v. City of Dallas*, supra, at 18 (the Court agrees that testimony regarding training that allegedly led to procedural missteps preceding Officer Rowden's physical encounter must be excluded under Rule 702's relevancy requirement). The lack of relevancy also bars testimony about conduct after the use of force. In *Harper*, the Court excluded opinion testimony on the adequacy of the department's Internal Affairs Division or its post-shooting investigation as irrelevant and unlikely to assist the jury. *See also, Flanagan v. City of Dallas*, *supra* at 13.

Therefore, any failure to follow so-called standards and any failure to properly train in the

use of the Taser are likewise be irrelevant to the shooting. *See Munroe v. City of Austin*, 300 F. Supp. 3d 915 (W.D. Tex. 2018).[1] The rule that expert opinions as to whether a defendant violated the law are inadmissible also precludes an opinion concerning whether the County is liable for its alleged failures, specifically, whether it was deliberately indifferent in failure to train or supervise McAndrews.

B. Peters Is Not Qualified to Offer An Opinion On Defendant's Use of Force.

It is critical to scrutinize Dr. Peters' qualifications. *See In re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1233 (5th Cir. 1986) (The ultimate issue can too easily become whatever an expert witness says it is, and the expert can become nothing more than an advocate of policy before the jury.); *Amin-Akbari v. City of Austin, Tex*. 52 F. Supp. 3d 830 (W.D. Tex. 2014)(Courts must make certain that an expert employs the same level of intellectual rigor that characterizes the work of an expert in the relevant field.)

As with any expert Dr. Peters may be qualified to offer some opinions, but not others. *Pharr v. Wille* 2016 U.S. Dist. LEXIS 99456, 2016 WL 4082740 (W.D. Tex. 2016) (attached as Appendix D) is an important case because of the district court's meticulous comparison between the proposed expert's qualifications and his testimony. In *Pharr*, the court denied expert status based on lack of recent and relevant experience and because much of his experience irrelevant. The witness was a PhD in Criminology and taught at a major state university, but had not taught for years. He also served as a police officer in a part-time capacity from 1973 to 1992. However, over that 18-year period his policing actually only amounted to a year and a half or so (*Id.* at 17-23). Dr. Peters' qualifications in this case present issues similar to those addressed in *Pharr*. He worked as a police

[1] If the use of the Taser is alleged to be an unreasonable use of force, that claim clearly fails because of McAndrews qualified immunity.

officer only during the mid-1970s. His *CV* reflects that much of his experience was not as a patrol officer and that he also pursued and obtained a college degree (criminal justice) and an associate's degree (corrections) during this time. (The part of Dr. Peters' CV pertaining to his education, experience and academic instruction is attached as Attachment B). He has extensive formal education after his bachelor's degree in 1975, but none of it pertains to use of force, or even criminal justice: M.S. (Public Relations) 1976; M.BA. (Marketing/Management) 1978; M.A. (Career and Technical Education) 2013; Ph.D. (Applied Management & Decision Sciences) 1999.

So, his experience as an officer is too limited and too remote in time to be helpful and his education since 1975 is unrelated to his proposed testimony. His experience since the mid 1970s is varied; he has provided consultation and education on a variety of topics, including use of force training and other law enforcement issues, but also on management, correctional issues, sexual harassment, self-defense and other issues. Dr. Peters has read about a a lot of subjects and taught about them, but his formal education and experience did not give him any expertise about a patrol deputy's use of force. He can discuss what certain organizations recommend as model policies, but *anyone* could do that.

Whether a witness is qualified as an expert can only be determined by comparing the specific area of the witnesses' expertise with the subject matter of the witness's testimony. *See Tanner v. Westbrook*, 174 F.3d 542, 548 (5th Cir. 1999)("The issue before the Court is whether this particular expert had sufficient specialized knowledge to assist the jurors in deciding the particular issues in this case."). Dr. Peters lacks experience and specialized knowledge about use of force, so his testimony should not be allowed.

C. The Proposed Testimony Would Not Be Reliable

The gatekeeping obligation applies to all expert testimony, not just scientific testimony. *America v. Matthews*, 178 F.3d 295, 304 (5th Cir. 1999). In *Daubert*, the Supreme Court offered an illustrative list of factors to use in judging the reliability of expert testimony. These factors include whether the expert's theory or technique: (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error or standards controlling its operation; and (4) is generally accepted in the relevant scientific community. *E.g. Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002). These factors are not mandatory or exclusive; other factors may be considered. *See Black v. Food Lion*, 171 F.3d 308, 311-12 (5th Cir. 1999); *Hathaway v. Bazany* 507 F.3d 312 (5th Cir. 2007). However, the existence of sufficient facts and a reliable methodology is in all instances mandatory. *Id.* at 318. The gatekeeping function requires more than simply "taking the expert's word for it." *Graham v. Dallas Area Rapid Transit* 288 F. Supp. 3d 711, 731-32 (N.D. Tex. 2017); *James v. Harris County*, 508 F. Supp. 2d 535, 545 (S.D. Tex. 2007)(excluding opinion as "unsupported by any detailed explanation or any empirical, psychological, or scientific empirical research or by peer reviewed articles."). *Pharr v. Willy*, discussed above concerning Dr. Peters' qualifications, is again instructive. There, the court noted that the expert had not provided independent validation of his research methodology and that there was no indication his publications have been peer reviewed, so the court held that the expert's opinions clearly failed the reliability prong of *Daubert*. *Pharr v. Willy* at 24.

In the present case, Dr. Peters' fails to show that the various opinions he offers (discussed in Section III, below) meet the above standards. Rather than being grounded in sound methodology, he typically just asserts that Defendants' conduct failed to comply with certain standards that are not

shown to be relevant, nor is there any showing that any of the referenced standards , if followed, would result in fewer constitutional violations, nor is there any methodology by which the standards could be applied to the present case. So, they are not reliable, they would not assist the jury and they should be excluded.

D. The Proposed Testimony Would be Confusing and Prejudicial

Rule 403 of the FEDERAL RULES OF EVIDENCE provides that the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice or confusing the issues. To the extent Dr. Peters' testimony would be marginally relevant, it should be excluded under Rule 403. *Kelley v. American Heyer-Schulte Corp*., 957 F. Supp. 873 (W.D. Tex. 1997) (recognizing that the chance expert testimony will unduly prejudice is extremely high, especially on a confusing subject, where nuances are more likely to overwhelm and confuse the jury than to help it). To the extent Dr. Peters' qualifications or methodology are questionable, the likelihood that it will confuse the jury is very high and it is properly excluded. *See LaCombe v. A-T-O, Inc.*, 679 F.2d 431, 435, footnote 5 (5th Cir. 1982) (noting the probative value of such expert testimony, stripped of its claim of expertise, is very low); *Gammill v. Jack Williams Chevrolet*, 972 S.W.2d 713,722 (Tex. 1998) (potential prejudice of expert testimony gives judges a heightened responsibility to ensure that testimony is reliable).

As discussed in Section III, below, Dr. Peters' opinion testimony would be unfairly prejudicial to the extent it includes discussion of supposed "national standards." The legal standard for use of force is whether it is objectively reasonable; any discussion of supposed national standards and whether Defendant McAndrews failed to satisfy them is irrelevant and unfairly prejudicial to the extent it would imply to the jury that its job is anything other than to determine whether McAndrews'

use of force was reasonable.

E. Expert Testimony Is Unnecessary

When the jury is equally competent to form an opinion about the ultimate fact issues or the expert's testimony is within the common knowledge of the jury, the trial court should exclude the expert's testimony." *Adkins Adjustment Serv. v. Blumhof*, 2001 U.S. Dist. LEXIS 5285 (N.D. Tex 2001), citing *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000). *Peters v. Five Star Marine Service*, 898 F.2d 448, 450 (5th Cir. 1990) (where jury could assess this situation using only their common experience and knowledge, expert testimony was unnecessary). Certainly, "[a]n expert is not in better position than the jury to evaluate credibility and states of mind." *Marlin v. Moody Nat'l Bank*, N.S., 248 Fed. Appx. 534, 541 (5th Cir. Sept. 19, 2007). Even if Dr. Peters is deemed qualified, his testimony would not assist the jury, because: 1) much of his testimony would not be relevant; 2) the jury is equally capable of assessing the reasonableness of Defendant McAndrews' use of force; 3) based on a review of his report, it appears that Dr. Peters intends to offer impermissible legal conclusions; 4) Peters' does not establish a reliable methodology.

## III. DISCUSSION OF PETERS' PROPOSED TESTIMONY

Dr. Peters' report contains a list of his opinions in its executive summary, beginning on page 3, and his supplemental report, attached hereto as Appendix E, contains additional opinions also starting on page 3. In light of the law applicable to expert testimony, especially that discussed in Sections I and II, above, Plaintiffs have not satisfied their burden to establish the admissibility of Dr. Peters' testimony. Below are the specific reasons to exclude the opinions he intends to offer, as well as the report itself.

**No. 1.** Deputy McAndrews violated the officer safety principle of disengagement with Mr. McAfee after the initial TASER

**REASONS TO EXCLUDE:** 1) Actions occurring before the moment force was used are irrelevant, as explained above; 2) Dr. Peters is not qualified and methodology is apparent, so the opinion is not reliable; 3) the Taser issue is not relevant to the shooting. *See Munroe v. City of Austin*, 300 F. Supp. 3d 915 (W.D. Tex. 2018).

**No. 2.** Deputy McAndrews failed to follow TASER ECW training when he aimed at Mr. McAfee's chest area and then discharged the ECW

**REASONS TO EXCLUDE:** 1) Dr. Peters fails to show why the manufacturer's training is relevant to the issue of use of force in this case; 2) this is irrelevant to whether the shooting, which occurred later, was reasonable; 3) the assertion that McAndews should not have aimed at the chest is irrelevant; nothing about this hurt McAfee; 4) the idea that the Taser would have been more effective if McAndrews would have been farther from McArthur is speculative and unreliable - Peters does not state definitively how close he should've been or exactly how far he was, nor can Peters prove that Mr. McAfee would have been rendered immobile had the distance been greater.

**No. 3.** Deputy McAndrews failed to follow TASER ECW training when he attempted to "drive stun" Mr. McAfee.

**REASONS TO EXCLUDE**: 1) Whether Taser training was followed is irrelevant to the decision to use force; 2) the provisions of Taser training is not shown to be relevant or a substitute for the legal standard of whether the force used was reasonable; 3) In this section, Peters says pain will generally make the individual attempt to get away from it or push the device away, but Peters is not shown to be an expert in the reaction to pain.

**No. 4.** The force used by Deputy McAndrews was inconsistent with and violated national use-of-force standards, recommendations, and guidelines

**REASONS TO EXCLUDE**: 1) This is an inadmissible conclusion of law about a legal issue; Peters says that the national standard is one of objectively reasonable force, under the Fourth

Amendment, based upon the totality of the circumstances known to the officer when force was used. This is a legal standard and experts are not allowed to testify to legal issues *Mayfield v. Brewer*, 2014 U.S. Dist. LEXIS 153454 2014 WL 5467011 at 4-5, (S.D. Miss. 2014)(failure to follow standards is an inadmissible legal conclusion); 2) Peters fails to show any methodology used to form this opinion, so its reliability has not been shown; 3) the opinion appears to be based on a mistake of fact; Peters says McAfee committed no crime, but it is uncontested that he assaulted both a peace officer and his sister; 4) With respect to whether McAfee was a threat, Peters says Mr. McAfee "could not have formed the intent" because of his mental illness, but he is not shown to be an expert in psychiatry, and this is also an inadmissible conclusion about Mr. McAfee's state of mind; and 5) the conclusion about Mr. McAfee is irrelevant; if he was a threat (and he was), it is irrelevant that he did not intend to be.

**No. 5.** The behavior of Deputy McAndrews violated the *Law Enforcement Code of Ethics*

**REASONS TO EXCLUDE:** 1) the Law Enforcement Code of Ethics is not the standard for use of force, so this opinion is irrelevant to whether the use of force was reasonable; 2) it is also conclusory – Dr. Peters does not say what McAndrews did that violated the Code or offer any reasoning or methodology in support of his opinion.

**No. 6.** Harrison County, Texas and its policymakers, Judge Taylor and Sheriff McCool, failed to guide and limit deputy discretion by developing and issuing a written policy and procedure on responding to and conducting welfare checks on individuals, thereby falling below national policy standards, recommendations, and guidelines.

**REASONS TO EXCLUDE:** 1) This is irrelevant because it focuses on alleged mis-steps that are not relevant to the use of force because they occurred before the instant that the decision to use force was made; therefore, any failures of policy or training on the issue are likewise irrelevant; 2) the so-called national standards are not relevant; only the legal standard concerning municipal liability is

relevant; 3) It would be confusing and prejudicial to allow the jury to think any other standard might be determinative of county liability; 4) Plaintiff's have failed to establish that Dr. Peters is qualified to offer this opinion; by identifying Judge Taylor as a law enforcement policymaker, he indicates that he is not.

**No. 7.** Harrison County, Texas and its policymakers purposively failed to guide and limit deputy discretion by developing and issuing a written policy and procedure on responding to and interacting with people who have mental illness and/or disabled, thereby falling below national policy standards, recommendations, and guidelines.

**REASONS TO EXCLUDE:** 1) The statement that policymakers "purposefully failed to guide" is an inadmissible speculation about the mental state of the policymakers; 2) the failure to have a welfare check policy is irrelevant because it is not focused on the moment McAndrews made the decision to use force; 3) the so-called national standards are not shown to be relevant and would most likely be confusing to the jury, which might assume they constitute the legal standard; 4) Peters is not qualified, nor is his opinion reliable.

**No. 8.** Harrison County cannot train its deputies about HCSO welfare check policy and procedure because it lacked such policy, which falls below national career and technical training standards.

**REASONS TO EXCLUDE:** 1) for the reasons set forth in number 7, this opinion is irrelevant; 2) any suggestion that the so-called national standards have anything to do with the use of force in this case would confuse the jury about what standards are applicable in determining liability; 3) Peters is not shown to be qualified, nor is the opinion reliable.

**No. 9.** Harrison County and its policymakers purposively failed to train Deputy McAndrews on how to conduct welfare checks, on how to interact with disabled individuals, and on the ADA, which falls below training standards, recommendations, and guidelines.

**REASONS TO EXCLUDE:** 1) The allegation that policymakers "purposefully failed to train" is inadmissible speculation on Defendants' mental states; 2) this alleged failure to train is irrelevant

because it is not relevant to whether the force used was excessive; 3) there is no showing that Dr. Peters' employed sound methodology, so it is not reliable.

**No. 10.** Harrison County failed to use a valid, reliable, and comprehensive employee performance evaluation instrument and had a custom, practice, or policy of not including a performance improvement plan or goals for Deputy McAndrews during the next reporting period that further demonstrated the inadequate leadership and failure to supervise it deputies, and which was a material cause in Deputy McAndrews' aggression toward Mr. McAfee.

**REASONS TO EXCLUDE**: 1) Whether and how the county evaluated performance is irrelevant to the use of force 2) Dr. Peters is not shown to be qualified to render this opinion; 3) there are many ways to supervise and Peters has not shown any method by which he determines which way yields good results and what does not, so it is not reliable; 4) there is a legal standard for county liability for failure to supervise and train; this opinion is irrelevant to the proper legal standard and would be confusing and prejudicial.

**No. 11.** Harrison County and its policymakers have had a custom, practice, or policy of failing to objectively, quantitatively test their officers on ECW "Drive Stun" and other psychomotor domain skills during training programs to demonstrate their proper use of an ECW, which is outside the scope of career and educational testing standards for deputies who carry a TASER.

**REASONS TO EXCLUDE:** 1) this opinion is irrelevant to the decision to use force; the effectiveness of McAndrews' use of the Taser is irrelevant; 2) Peters offers no methodology or reliable statistical evidence that shows how to evaluate the various training programs on the use of a Taser, and no showing that following certain standards leads to fewer constitutional violations; 3) the opinion is based on his failure to find a written policy, but does not show that no training was done or what it consisted of; 4) it would confuse the jury and unfairly prejudice Defendants, to allow Peters to imply that Taser training standards have anything to do with the legal standard for judging the use of force.

**No. 12.** Harrison County and its policymakers created a Sheriff's Office organizational atmosphere that condoned unconstitutional, reckless, and dangerous behavior by its deputies.

**REASONS TO EXCLUDE:** 1) This is conclusory, speculative and incorrect; 2) Plaintiff is not qualified to render this opinion; 3) there is no methodology that establishes this opinion is reliable; 4) the opinion is not properly applied to facts of this case.

**No. 13.** Harrison County and its policymakers failed to conduct a timely and objective Internal Affairs investigation into the McAfee killing that appears will result in the ratification of Deputy McAndrews' outrageous conduct and which falls below internal investigative standards, recommendations, and guidelines.

**REASONS TO EXCLUDE:** 1) this is both speculative and conclusory; 2) this is irrelevant; any ratification of McAndrews' conduct does not pertain to the use of force alleged in this case. *Harper v. City of Dallas (Appendix C* at p. 35)(post incident investigation irrelevant); 3) as the Court is aware, it is considered more appropriate and is more customary in Texas to ask the non-partisan Texas Rangers to conduct such an investigation and to rely on it, as the County did in this case.

**Opinion 6 of Supplemental Report:** Deputy McAndrews purposively fails to provide cardiopulmonary resuscitation (CPR) to Mr. McAfee after willfully shooting him because he isn't trained to perform CPR by Harrison County and/or Sheriff McCool, or deliberately refused. (Dr. Peters also expresses opinions in his report under this topic that CPR was required and that "..shooting him without administering CPR made him suffer.")

**REASONS TO EXCLUDE:** 1) Dr. Peters is not a medical professional and therefore is not qualified and no methodology is apparent, so the opinion is not reliable; 2) this is both speculative and conclusory 3) he is not qualified to offer an opinion on causation and whether administering CPR would have made any difference whatsoever, thus any testimony regarding CPR is unreliable and irrelevant, and 4) it would confuse the jury and unfairly prejudice Defendants.

WHEREFORE, PREMISES CONSIDERED, Defendants pray that the court exclude the expert testimony of Dr. John V. Peters and his report.

Respectfully submitted,

**FLOWERS DAVIS, P.L.L.C.**
1021 ESE Loop 323, Suite 200
Tyler, Texas 75701
(903) 534-8063
(903) 534-1650 Facsimile

**ROBERT S. DAVIS**
State Bar No. 05544200
rsd@flowersdavis.com
Lead Attorney

**CHAD C. ROOK**
State Bar No. 17227750
ccr@flowersdavis.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing instrument was served upon counsel of record as follows in the above entitled and numbered cause this the 26th day of March 2020, in the following manner:

_X_ Via ECF

**Robert S. Davis**

**CERTIFICATE OF CONFERENCE**

Pursuant to the meet and confer requirements, the undersigned confirms that he spoke to counsel for Plaintiffs about this Motion on March 27, 2020, and the Motion is opposed.

**ROBERT S. DAVIS**