IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| LAVERIA HARPER (as Personal Representative of the Estate of Lorine McAfee), <br><br> *Plaintiff,* <br><br> v. <br><br> JEFF MCANDREWS and HARRISON COUNTY, TEXAS, <br><br> *Defendants*. | § § § § § § § § § § § § § § Case No. 2:18-cv-00520-RSP |

## MEMORANDUM ORDER

Before the Court are (1) Defendants' Motion to Exclude the Expert Testimony of Dr. John G. Peters (**Dkt. No. 104**.); (2) Defendants' Motion to Exclude the Expert Testimony of Dr. Stan V. Smith (**Dkt. No. 105**); and (3) Defendants' Objections to Plaintiffs' Responses to Defendants' Motion to Exclude (**Dkt. No. 124**).

### I. PROCEDURAL BACKGROUND

On November 22, 2018, Laveria Harper, as Personal representative of the Estate of Arther McAfee, Jr., and Lorine McAfee[1] filed a complaint against Jeff McAndrews and Harrison County, Texas over the events leading to the death of Arther McAfee on January 20, 2018. (Dkt. No. 1) On February 12, 2020, Plaintiff's filed the operative Fifth Amended Complaint against both defendants. (Dkt. No. 84.)

---

[1] Lorine McAfee died of unrelated causes in 2019, and Laveria Harper was substituted as her personal representative as well as that of Arther McAfee. (*See* Dkt. Nos. 28 and 30).

On March 27, 2020, both parties filed motions for summary judgment and motions to exclude expert testimony, including the instant motion. (*See* Dkt. Nos. 100, 101, 103, 104, 105.) On November 6, 2020, the Court entered its Order on both summary judgment motions. (Dkt. No. 160.) That Order was appealed in 2020, and the appeal was ultimately dismissed by the Fifth Circuit on August 17, 2023. (*See* Dkt. Nos. 161, 166.) On September 29, 2023, the Court issued the Fourth Amended Docket Control Order setting trial for January 29, 2024. (Dkt. No 169).

The Court previously denied the motions to exclude experts without prejudice to reurging them after the appeal. (Dkt. No. 164.) In the proposed Joint Pretrial Order filed by the parties on December 4, 2023, the parties reurge their motions to exclude. (*See* Dkt. No. 180 at 29-30.) As such the Court takes these motions up now.  Because Plaintiff will not be calling Dr. Smith as a witness (Dkt. No. 179), the Motion to Exclude his testimony (**Dkt. No. 105**) is **Denied as moot**.

The November 6, 2020 Memorandum Order (Dkt. No. 160) addressing the Defendants' motions for summary judgment sets forth the liability issues remaining for trial:

(1) Whether at the time that Sgt. McAndrews shot Mr. McAfee, Mr. McAfee posed a threat of serious physical harm, either to Sgt. McAndrews or others;

(2) If not, whether Harrison County's policy--of allowing a single deputy to respond to a call for a welfare check regarding a mentally ill person—was a moving force behind the use of excessive force; and

(3) Similarly, whether the County failed to provide adequate training to Sgt. McAndrews on the use of his taser, in a manner that was a moving force behind the use of excessive force.

## II.     FACTUAL BACKGROUND

On the morning of January 20, 2018, the Harrison County Sheriff's office received a telephone request from the McAfee family to conduct a welfare check because they had not heard from Mr. McAfee for a couple of days. Sgt. McAndrews was dispatched to the residence where he was met by Mr. McAfee's sister, Lorine McAfee, who lived next door and had a key. As shown on Sgt. McAndrews' body camera, they entered the residence together, with McAndrews announcing who they were and that they just wanted to check on Mr. McAfee.  Mr. McAfee answered from the back bedroom but gave confusing answers, seeming to say that he did not know where he was.  Within seconds after Sgt. McAndrews reached the bedroom door, where Mr. McAfee was seated on the edge of his bed, Mr. McAfee angrily attacked Lorine McAfee, knocking her to the ground and hitting her with his fists many times.[2]   Sgt. McAndrews discharged his taser immediately but it did not stop Mr. McAfee.  A struggle ensued in the narrow hallway, knocking off the body camera and leaving only audio for about two and a half minutes before Sgt. McAndrews discharged his pistol twice. During those two minutes, the Sgt. can be heard repeatedly telling Mr. McAfee to turn on his stomach and also to let go of the taser, which can be heard discharging several times. However, it is impossible to know who was doing what. Mr. McAfee became unresponsive almost immediately and died as a result of the gunshot wounds.

## III.    OBJECTIONS TO PLAINTIFFS' RESPONSES

Defendants object to the inclusion of affidavits of the two experts in support of Plaintiff's response to Defendants' motions to exclude, and request that they be stricken. (Dkt. No 124). In

---

[2] Both the body camera video of Deputy Castillo (Dkt. No. 143-5), and the interview of Lorine McAfee by Ranger Mason (Dkt. No. 100-3 at 11) show that she was not physically injured by her brother or the deputy.

- 3 -

their Objection, Defendants note that the Court granted the parties additional time to file supplemental expert reports to address new allegations of the Fifth Amended Complaint by April 1, 2020. (*Id.* at 2.) Defendants note that the affidavits were filed after this deadline (on April 9) and address Defendants' motions to exclude, rather than the new contentions of the Fifth Amended Complaint. (*Id.*) Defendants contend this is not permitted under Federal Rules. (*id.* at 2-3.)

Plaintiff responds that "all of the testimony Dr. Peters or Dr. Smith provide in their affidavits is grounded in their opinions in the expert reports Defendants seek to exclude." (Dkt. No. 131 at 1.) Plaintiff appears to contest Defendants' allegations that these affidavits are supplemental expert reports and contends that they are made in response to Defendants' motions to exclude. (*Id.* at 1-2.)

The Court finds that the affidavit of Dr. Peters (the only one still at issue) does not create any unfair prejudice and the request to strike it is denied.

## IV.   LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have

considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## V. ANALYSIS

In their motion, Defendants argue that much of the testimony of Dr. Peters would be irrelevant and unreliable, that Dr. Peters' is not qualified to offer an opinion on Sgt. McAndrew's use of force, and that Dr. Peters' testimony would be confusing, prejudicial, and unnecessary. (Mot. at 3-9.)

First, Defendants argue that opinions regarding events prior to the use of deadly force are irrelevant as a matter of law because the "excessive force inquiry is confined to whether the [officer] was in danger at the moment of the threat that resulted in the [officer's] shooting." (Mot. at 3 (quoting *Bazan ex rel. Bazan v. Hidalgo Cnty.,* 246 F.3d 481, 489, 493 (5th Cir. 2001); citing *Rockwell v. Brown*, 664 F.3d 985 (5th Cir. 2011).) Defendants argue that both testimony regarding McAndrews actions and policies relating to actions taken prior to "the moment of the threat" are irrelevant. (*Id*. at 3-5.) For the latter point, Defendants direct the Court to two cases: *Harper v. City of Dallas* and *Flanagan v. City of Dallas*. (*Id*. at 4-5.) Defendants further cite *Munroe v. City of Austin*, for the notion that "the Taser issue is not relevant to the shooting" but provide explanation for this citation. (*Id*. at 10.)

Plaintiff responds that the cases cited by Defendants are distinguishable and Dr. Peters' proposed testimony is relevant Plaintiff's claims. (Opp. at 12-14.) Plaintiff alleges *Rockwell* is distinguishable because that court "did not consider whether evidence about the officers' conduct before th[e use of deadly force] was relevant." (*Id*.) Plaintiff further argues *Harper* is distinguishable because the policies at issue were not "closely related" to the use of excessive force. (*Id*. at 13.) Plaintiff argues that Dr. Peters' discussion of Sgt. McAndrews' actions and the policy governing those actions, prior to the alleged use of excessive force are closely related here as they are the cause of that use of deadly force. (*Id*.)

Defendants respond by citing *Young v. City of Kileen* arguing "[t]he Fifth Circuit rejected the notion that liability could arise from an officer's negligence in creating a dangerous situation." (Reply at 2.) Defendants also cite *Fraire v. Arlington*, arguing that it followed *Young* in finding any actions prior to the moment of the use of force irrelevant. (*Id*. at 2.)

While the Defendants are correct that the scope of the excessive force inquiry is limited to the severity of the threat resulting in the use of the allegedly excessive force, the scope of this case is larger than merely the excessive force inquiry. In particular, Plaintiff has also alleged Harrison County "failed to properly train, supervise, screen discipline, implement and/or enforce policies, practices and procedures for the Harrison County Sheriff's Department." (Dkt. No. 84 at 1-2.) While the Court granted summary judgment as to several portions of this claim, the claim remains, in particular as to the training and policy regarding the use of tasers. (*See* Dkt. No. 160 at 19-20.) Dr. Peters is permitted to discuss and offer opinions as to the actions taken prior to the use of the alleged excessive force and related policies and training in support of Plaintiff's claims against Harrison County, to the extent the opinions are relevant to the issues remaining in this case.

This approach aligns with the case law cited by Defendants. First, in *Rockwell v. Brown*, 664 F.3d 985 (5th Cir. 2011), the court was not faced with an inadequate training claim. Rather, the court's analysis was limited to determining if the choice to enter the room of the ultimate victim of the deadly force could be considered in support of the excessive use of force claim. *Id*. at 991. Second, *Harper v. City of Dallas* the court noted that "Plaintiffs may offer evidence regarding the City's training of its police officers that is pertinent to Plaintiffs' claims that the City of Dallas and Officer Rowden are liable based on Officer Rowden's alleged use of excessive force against Harper." 2017 U.S. Dist. LEXIS 200534, *22. In *Flanagan v. City of Dallas*, the Court addressed post-incident actions that it found had no impact on the determination of the lawfulness of deadly

force and thus has no relevance to the issue at hand, whereas here the issues are pre-incident and closely relate to the use of deadly force. 2017 U.S. Dist. LEXIS 201365, *13. In *Young v. City of Killeen, Tex.* the Fifth Circuit found that a police officer "negligen[tly ]creating a situation" where the use of deadly force would be permitted is not sufficient to establish that such a use of deadly force was a constitutional violation. 775 F.2d 1349, 1353 (5th Cir. 1985). However, *Young* does not provide that there is no recourse for such an incident. *Id*. Likewise, *Fraire* does not expand *Young* in this respect. 957 F.2d 1268, 1275–76 (5th Cir. 1992).

Defendants also argue that Dr. Peters does not possess the requisite qualifications to opine on Sgt. McAndrews' use of force. (Mot. at 5-6 (citing *Pharr v. Wille* 2016 U.S.Dist. LEXIS 99456, 2016 WL 4082740 (W.D. Tex. 2016)).) Defendants note that Dr. Peter's policing experience occurred in the mid-1970's while he pursued degrees in criminal justice and corrections, and that after his policing experience Dr. Peters obtained master's degrees in public relations, marketing and management, and career and technical education, and a PH.D. in Applied Management & Decision Sciences. (*Id*. at 6.) Defendants argue Dr. Peters' policing experience is too limited and distant and his educational experience is not on point. (*Id*.) Defendants argue while "Dr. Peters has read about a lot of subjects and taught about them, [] his formal education and experience did not give him any expertise about a patrol deputy's use of force." (*Id*.)

Plaintiff responds that Dr. Peters has over 35 years of experience in consulting regarding "police, correctional, security, and municipal practices; criminal justice products; civilian use-of-force; management studies; [and] organizational diagnosis of criminal justice agencies; and, sexual harassment surveys and studies." (Opp. at 15.) Further plaintiff contends Dr. Peters develops policies, procedures, rules and regulations for agencies on use-of-force training and equipment. (*Id*.)

The Court finds that with the experience described by Plaintiff, Dr. Peters is sufficiently qualified to opine on police and criminal justice matters including the use of force. While experience in a particular job may provide a wealth of expertise helpful to a jury, it is definitely not the only source of expertise on the issue.

Further, *Pharr v. Wille* is not as instructive as Defendants claim. The expert in *Pharr* retired from teaching criminology 25 years prior to the court's order and "had not participated in any training on how to handle a driving while intoxicated ('DWI') suspect, and only stay[ed] abreast of developments in policing by having 'sit-down discussions[s]' with police officers who work for him while off-duty." *Pharr v. Wille*, No. 1:14-CV-762-DAE, 2016 WL 4082740, at *6 (W.D. Tex. July 29, 2016). This is wholly distinct from the instant case.

Next, Defendants argue that Dr. Peters fails to show that his opinions follow an acceptable methodology and complain they would be confusing, prejudicial, and unnecessary. (Mot. at 7-8.) Defendants argue that Dr. Peters simply "asserts that Defendants' conduct failed to comply with certain standards that are not shown to be relevant, nor is there any showing that any of the referenced standards, if followed, would result in fewer constitutional violations…" (*Id*.) Defendants argue Dr. Peters' opinions regarding McAndrews failure to follow TASER ECW training should be excluded for these reasons. Defendants argue that Dr. Peters fails to show why manufacturer training is relevant, that McAndrews should not have aimed at McAfee's chest is irrelevant as it did not hurt McAfee, Dr. Peters does not support his conclusion that the TASER would have been more effective if McAndrew had fired it from a greater distance. (*Id*. at 10.) Defendants make similar arguments with regards to Dr. Peters' opinions on the use of "drive stun." (*Id*. at 10, 13.)

Plaintiff responds that Dr. Peters' testimony is reliable because he testifies "TASER lesson plans are generally deficient when it comes to psychomotor skill testing" and "Taser International, Inc. informs all law enforcement agencies that adopt the product that training and policy development are the responsibility of the agency itself" and "if the TASER lesson plan is adopted and never modified, it is insufficient for the proper testing of officer competency for using TASER devices." (Opp. at 17-18.) Plaintiff notes Dr. Peters concludes "the HCSO is still simply using the manufacturer's lesson plan, which is … insufficient to train or provide any basis to evaluate officer competency."

The Court finds that Dr. Peters' proposed testimony on the proper training for the use of the TASER is probative on the issue of inadequate training and should not be excluded. Defendants identify an important concern, namely that Plaintiff and Dr. Peters need to avoid the suggestion that the recommendations of Taser International, Inc. and its statements regarding responsibility are the governing issues or the law. They are not. However, upon review of Dr. Peters' opinions the Court finds that they are sufficiently reliable and helpful. For example, Dr. Peters opines that Taser International, Inc. provides certain recommendations for the greatest efficacy in the deployment of a TASER that if followed and understood might have avoided the death of Mr. McAfee. While the Court does not find that Taser International, Inc.'s recommendations themselves carry legal force, they may be used to provide factual evidence in support of plaintiff's arguments. As such the Court will not exclude this testimony.

Further to Defendants arguments regarding Dr. Peters' methodology, Defendants note Dr. Peters' opinions that McAndrews violated national use-of-force standards and the Law enforcement Code of Ethics. (Mot. at 10-11.) Defendants argue these opinions are irrelevant and impermissibly supplant the appropriate Fourth Amendment standard with ones Dr. Peters would

prefer. (*Id*.) Defendants argue this is both irrelevant and amounts to an inadmissible conclusion of law. (*Id*.)

The Court agrees that Dr. Peters' discussion of the Law Enforcement Code of Ethics should be excluded. Dr. Peters' proposed opinion does not connect the alleged violation of the Law Enforcement Code of Ethics to any factor at issue before the Court. (*See* Dkt. No. 104-1 at 10.) Without any relevance to the issues to be decided at trial, the Law Enforcement Code of Ethics and any alleged violation is not relevant.

Dr. Peters' discussion of Sgt. McAndrews' alleged violation of national use-of-force standards is more complex. Dr. Peters first opines that "[o]fficers are taught that the national standard regarding the use of deadly and non-deadly force that amounts to a 4th Amendment seizure is one of objectively reasonable force, under the United States Constitution's Fourth Amendment…" (Dkt. No. 104-1 at 7.) While the Court will provide a fulsome set of instructions to the jury detailing the law at hand and may limit the parties in their recitation of the law at trial to avoid confusion, Dr. Peters' statement is not otherwise problematic. Likewise, Dr. Peters further opines "[o]fficers are taught, among other things, 'reasonableness contemplates careful consideration of the facts and circumstances of the incident including: (1) the severity of the crime at issue, (2) whether the person poses an immediate threat to the safety of officers or others, and (3) whether the person is actively resisting arrest or attempting to evade arrest by flight,'" citing *Graham v. Connor*. (*Id*.) Again, this is the law and while the Court may guide how it is presented to the jury at trial, this proposed testimony is not otherwise problematic. While Dr. Peters embraces the ultimate issue of whether Sgt. McAndrews' use of force was justified, Dr. Peters' opinion is focused on applying the facts to the law rather than merely commenting on the law. It is not a conclusion of law that should be excluded.

Dr. Peters' further proposed testimony is more concerning. Dr. Peters opines that he does not believe Sgt. McAndrews' use of force is permissible because McAfee did not commit a crime. (*Id*. at 8.) Concerningly, Dr. Peters opines that McAfee could not have formed the requisite mental state to commit any crime because of his mental illness. (*Id*.) However, Dr. Peters does not provide sufficient analysis to support this conclusion. Rather, Dr. Peters only states that "[h]is mental illness most likely prevented him from forming intent." (*Id*. at 9.) Without any real analysis for which Dr. Peters possesses relevant expertise, the Court will not permit Dr. Peters to testify to that opinion. Dr. Peters' discussion of McAfee's ability to form intent and the impact of his mental illness on his ability to commit a crime is excluded. The Court does not find the remainder of Dr. Peters' testimony on this point problematic.

For clarity, the Court summarizes its rulings following the manner in which Defendants listed the opinions at issue in the motion:

"**No. 1.** Deputy McAndrews violated the officer safety principle of disengagement with Mr. McAfee after the initial TASER

**REASONS TO EXCLUDE:** 1) Actions occurring before the moment force was used are irrelevant, as explained above; 2) Dr. Peters is not qualified and methodology is apparent, so the opinion is not reliable; 3) the Taser issue is not relevant to the shooting. *See Munroe v. City of Austin*, 300 F. Supp. 3d 915 (W.D. Tex. 2018)."

The Court denies this request because the opinion is relevant to whether Mr. McAfee posed a threat.

"**No. 2.** Deputy McAndrews failed to follow TASER ECW training when he aimed at Mr. McAfee's chest area and then discharged the ECW

**REASONS TO EXCLUDE:** 1) Dr. Peters fails to show why the manufacturer's training is relevant to the issue of use of force in this case; 2) this is irrelevant to whether the shooting, which occurred later, was reasonable; 3) the assertion that McAndews should not have aimed at the chest is irrelevant; nothing about this hurt McAfee; 4) the idea that the Taser would have been more effective if McAndrews would have been farther from McArthur is speculative and unreliable - Peters does not state definitively how close he should've been or exactly how far he was, nor can Peters prove that Mr. McAfee would have been rendered immobile had the distance been greater."

The Court does exclude this opinion. Whether Sgt. McAndrews followed his training in the use of the taser is not relevant. Whether he was properly trained on the taser is relevant to the extent that proper training might have avoided the need for excessive force. While these two issues are similar, the Court will enforce the distinction.

"**No. 3.** Deputy McAndrews failed to follow TASER ECW training when he attempted to "drive stun" Mr. McAfee.

**REASONS TO EXCLUDE**: 1) Whether Taser training was followed is irrelevant to the decision to use force; 2) the provisions of Taser training is not shown to be relevant or a substitute for the legal standard of whether the force used was reasonable; 3) In this section, Peters says pain will generally make the individual attempt to get away from it or push the device away, but Peters is not shown to be an expert in the reaction to pain."

The Court excludes this opinion for the reasons expressed regarding No. 2.

"**No. 4.** The force used by Deputy McAndrews was inconsistent with and violated national use-of-force standards, recommendations, and guidelines.

**REASONS TO EXCLUDE**: 1) This is an inadmissible conclusion of law about a legal issue; Peters says that the national standard is one of objectively reasonable force, under the Fourth Amendment, based upon the totality of the circumstances known to the officer when force was used. This is a legal standard and experts are not allowed to testify to legal issues *Mayfield v. Brewer*, 2014 U.S. Dist. LEXIS 153454 2014 WL 5467011 at 4-5, (S.D. Miss. 2014)(failure to follow standards is an inadmissible legal conclusion); 2) Peters fails to show any methodology used to form this opinion, so its reliability has not been shown; 3) the opinion appears to be based on a mistake of fact; Peters says McAfee committed no crime, but it is uncontested that he assaulted both a peace officer and his sister; 4) With respect to whether McAfee was a threat, Peters says Mr. McAfee "could not have formed the intent" because of his mental illness, but he is not shown to be an expert in psychiatry, and this is also an inadmissible conclusion about Mr. McAfee's state of mind; and 5) the conclusion about Mr. McAfee is irrelevant; if he was a threat (and he was), it is irrelevant that he did not intend to be."

The Court denies this request, except as to the issues of whether Mr. McAfee had the mental capacity to form the intent required for a crime.

"**No. 5.** The behavior of Deputy McAndrews violated the *Law Enforcement Code of Ethics*

**REASONS TO EXCLUDE:** 1) the Law Enforcement Code of Ethics is not the standard for use of force, so this opinion is irrelevant to whether the use of force was reasonable; 2) it is also conclusory – Dr. Peters does not say what McAndrews did that violated the Code or offer any reasoning or methodology in support of his opinion."

The Court grants this request.

The Memorandum Order on the summary judgment motions identifies the issues that remain for trial. That Order will be followed in determining which opinions of Dr. Peters will be

allowed at trial, since his reports were prepared before that Order. However, of the remaining opinions identified in Defendants' motion (as Nos. 6-13), only No. 6 is still relevant. Numbers 7 – 13 address matters eliminated from the case by that Order. The same is true of what is identified as No. 6 of the Supplemental report.

## VI.   CONCLUSION

As noted above, Defendants' Motion to Exclude is **GRANTED-IN-PART** and **DENIED-IN-PART** as provided above.

**SIGNED this 16th day of January, 2024.**

                                              ROY S. PAYNE
                                              UNITED STATES MAGISTRATE JUDGE